IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARY BELL WITHERSPOON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | CASE NO. 3:05-0530 |
| v. ) | JUDGE ECHOLS / KNOWLES |
| ) | |
| ) | |
| VERIZON WIRELESS, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

**I. Introduction and Background**

This matter is before the Court upon Defendant's Motion for Summary Judgment. Docket Entry No. 16. Along with that Motion, Defendant has contemporaneously submitted a supporting Memorandum of Law (Docket Entry No. 17), Separate Statement of Undisputed Material Facts (Docket Entry No. 18), and thirteen Exhibits[1] (Docket Entry No. 16, Exs. 1-

---

[1] Defendant did not submit an Affidavit verifying any of the thirteen Exhibits, but those Exhibits appear to be the following: 1) Excerpts of Plaintiff's Deposition; 2) a March 25, 2004, "Memorandum" written by Plaintiff to Ms. Kendra Glass reporting a therapist's recommendation that she take leave from work; 3) a February 23, 2004, letter from MetLife to Plaintiff denying her request for family and medical leave; 4) a June 3, 2004, letter from Defendant to Plaintiff requesting that she return to work on June 8, 2004; 5) a March 12, 2004, letter from MetLife to Plaintiff denying her Short-Term Disability benefits; 6) a June 3, 2004, letter from Sedgwick Claims Management Services, Inc., informing Plaintiff that her Workers' Compensation claim was not compensable; 7) a June 14, 2004, Memorandum from Defendant to Plaintiff notifying her of her termination for "job abandonment"; 8) a collection of awards and customer compliments of Plaintiff; 9) an October 27, 2003, "Coaching/Training Session" report; 10) Plaintiff's 2003 Performance review; 11) a February 14, 2004, email reporting that Plaintiff

1

13).

Plaintiff has filed a "Response to Motion for Summary Judgment" with attached Exhibits A through F.[2]  Docket Entry No. 32.

Defendant has filed a Reply.  Docket Entry No. 30.

---

would be attending refresher training class; 12) a January 24, 2006, letter from Defendant's counsel to Plaintiff offering to settle her unpaid wages claim; and 13) a June 5, 2003, letter from Defendant to Plaintiff confirming her hire as a Welcome Call Representative.

[2]As will be discussed in greater detail *infra*, Plaintiff's "Response" is not a response to Defendant's Motion, but rather, is a partial response to Defendant's Statement of Undisputed Material Facts that is, for the most part, not in compliance with Fed. R. Civ. P. 56 or the Local Rules.

Additionally, Plaintiff has not submitted an Affidavit verifying any of the documents in Exhibits A through F.  Plaintiff has, however, submitted a "Table of Contents" which lists the contents of each Exhibit as follows.  <u>Exhibit A:</u>  Resume and Job Search; Tennessee Department of Labor and Workforce Development Applicant Data Input; Application Letter Deputy Governor Cooley and Reply; Application Letter State of Tennessee Department of Personnel; Governor Bredesen-letter.  <u>Exhibit B:</u>  Medical Evaluation and Therapy Treatment Dr. Una Subbiah, Psy. D Licensed Psychologist; Dr. Trilby Williams, MD, Medical Certificate; Medical Billing Statements; Verizon Wireless Base Salary Information; Fidelity Federal Company Investments; Wage and Hour Claim and Claim For Commissioned Sales; Copy of Pay Check - Verizon Wireless; Tax Statements - Verizon Wireless.  <u>Exhibit C:</u>  U.S. Equal Opportunity Commission (EEOC) Dismissal and Notice of Rights Suit letter And Charge; Tennessee Department of labor And Workforce Development Wage Transcript and initial Determination and Decision of Appeals Tribunal.  <u>Exhibit D:</u>  Termination letters - Verizon Wireless; Letter to Human Resources and Supervisor with Dr.'s statement Justification of employee absence; Saturday, February 14, 2005 schedule; Employee Quality, Performance, and Production; Some examples of defective headsets, and computer system problems, Prohibiting performance of duties; Written complaints from employees regarding welcome call script; Welcome call program script; LPN Training Certificate; Request for work schedule change; New Hire Training Certificate; Welcome Call Inbound Schedule of all employees.  <u>Exhibit E:</u>  Self Employment - Prophetess, Marketing, Classification and Wedding Consultant, Community member Mayor's Office of Neighborhoods and Political Campaigns: Letter - Governor Don Sunquist, Mayor Bill Purcell, Vice-Mayor Howard Gentry, Governor Phil Bredesen, The 53rd Presidential Inaugural, Mayor Richard H. Fulton, Certification of Ordination, Republican Presidents' Day Dinner, Application Letter, Campaign Letter Governor Don Sunquist, Classification/Compensation Study Greenwood Cemetery, Minority Enterprise Development Week, Classification/ Compensation Plan-Tennessee Public Services Commission.  <u>Exhibit F:</u>  EMPLOYMENT-Tennessee State Government.

2

Plaintiff originally filed this pro se action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") on July 6, 2005, alleging employment discrimination based upon race, gender, and age. Docket Entry No. 1. Plaintiff's EEOC Charge of Discrimination avers in pertinent part as follows:

> I am a Black female within the protective age group. I was hired in [sic] or around June, 2004. ...
>
> I received anon-the-job [sic] injury which resulted in my being placed on a medical leave of absence. The company was made aware of my job-related medical impairment and health condition when I submitted medical documentation. Subsequently, I was wrongfully terminated while under a physician's care. My performance was above satisfactory and I received several accolades for exceeding the company's expectations. I was not given opportunity [sic] for return to work in accordance with my leave of absence which prevented me from the probability of performing the essential functions of my job with or without a reasonable accommodation. My employer subjected me to less favorable terms and conditions of employment to that of my peers who were not of my race and not within the protected age group. The employer's actions against me also adversely affected my wages.

Plaintiff's Complaint seeks compensatory damages in the amount of $5,000,000.00. *Id.*

Defendant filed its Answer denying liability on August 22, 2005. Docket Entry No. 4.

On November 18, 2005, Plaintiff filed an Amended Complaint. Docket Entry No. 11. Plaintiff's Amended Complaint alleges that she "is a black female within the protective age group" who was "wrongful[ly] discharged while on a medical leave of absence," and who was given "less favorable terms and conditions of employment to that of her peers who were not of her race and not within the protective group." *Id.* Plaintiff additionally asserts that Defendant violated her rights in "accordance to the Wage and Hour law" because she was not paid for the four minutes before the workday began that it took to "pull up" the computer to be "ready to

3

receive customer calls" and for the four minutes after the workday ended that it took to "close the systems." *Id.* Plaintiff asserts "Pay Discrimination" and argues "pay equity for employees performing the same job." *Id.* Plaintiff also avers retaliation, maintaining, "[b]ecause plaintiff was fired and no longer considered an employee of the defendant, her multiple line mobile phone services was [*sic*] cancelled on July 7, 2004," resulting in Plaintiff's possession of "costly telephones that are not in use."[3] *Id.*

Plaintiff's Amended Complaint seeks the following: $25,000.00+ for Medical Expenses; $3,498.57 for Pay Discrimination; $452.23 for Retaliation; $1,237.50 for Wage and Hour Claim; $60,000.00 for Health and Life Insurance Policy Loss; $20,000.00 for STI Yearly Bonus; $90,000.00 for Back Pay - Including Yearly Raise; $160,800.00 for Front Pay Over Five Years; $300,000.00 in Punitive Damages; and $339,000.00 for Pain and Suffering, for a total of $1,000,000.00. Docket Entry No. 11.

Defendant filed its Answer to Plaintiff's Amended Complaint on January 6, 2006, again denying liability and asserting numerous defenses. Docket Entry No. 12.

Defendant filed the instant Motion for Summary Judgment, thirteen Exhibits, supporting Memorandum of Law, and Separate Statement of Undisputed Material Facts, on January 26, 2006. Docket Entry Nos. 16-18. In its Motion, Defendant argues:

> 1. Plaintiff's claim for discriminatory discharge of her employment on the basis of her age, race, and gender should be dismissed because, <u>inter alia</u>, she voluntarily left her employment

---

[3] Plaintiff also mentions that she filed a claim for unemployment benefits and was ultimately found *eligible* to receive those benefits. Docket Entry No. 11, Amended Complaint, pp. 8-9. She does not appear be suing Defendant with respect to unemployment benefits, and it is unclear how Plaintiff might have suffered any injury as a result of being found eligible for unemployment benefits.

4

with Verizon Wireless and elected not to return to work;

      2. Plaintiff's claim for discriminatory job scheduling and job training on the basis of her age, race, and gender should be dismissed because, <u>inter</u> <u>alia</u>, none of the alleged actions constitute adverse employment action as contemplated by Title VII or any other anti-discrimination theory advanced by plaintiff, nor are there any facts in dispute that Verizon Wireless' decisions related to plaintiff were made for legitimate, nondiscriminatory reasons; and

      3. Plaintiff's claim for unpaid wages pursuant to the Fair Labor Standards Act is moot because Verizon Wireless has tendered an offer for full payment of all amounts claimed by plaintiff plus an additional amount for "liquidated" damages.

Docket Entry No. 16-1.

Plaintiff filed a "Response To Motion For Summary Judgment," which is actually something of a Response to Defendant's Separate Statement of Undisputed Material Facts.[4] Docket Entry No. 32. Plaintiff has attached Exhibits A through F to that Response.[5] *Id.* Many of Plaintiff's responses, however, are not cited to anything, much less are they cited to the record.

As has been noted, Defendant has filed a Reply. Docket Entry No. 30. In its Reply, Defendant argues that Plaintiff "does not legitimately dispute" any of the material facts set forth in Defendant's submissions, or adduce "even a hint of admissible evidence suggesting that

---

[4]Accordingly, Plaintiff has not actually responded to Defendant's Motion.

[5]As has been noted, Plaintiff has not submitted an Affidavit verifying the documents submitted in Exhibits A through F. Defendant does not challenge the veracity of the documents, however, and it appears that the documents are what Plaintiff claims they are. The undersigned notes that Plaintiff did not respond to each "undisputed fact" contained in her "Response." Regarding the "undisputed facts" to which Plaintiff did respond, the undersigned also notes that the majority of Plaintiff's responses are not in a form required by Fed. R. Civ. P. 56 or the Local Rules.

5

Defendant did anything toward Plaintiff with a racial, gender, or age animus."[6] *Id.* Accordingly, Defendant maintains that Plaintiff's discrimination claims should be dismissed. *Id.*

Defendant additionally argues that Plaintiff's FLSA claim is moot because Plaintiff concedes that the most she is due for her FLSA claim is $412.50, and Defendant has already offered to pay Plaintiff that amount and to pay her another $412.50 for liquidated damages. Docket Entry No. 30.

For the reasons set forth below, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED IN PART and DENIED IN PART. Specifically, the undersigned recommends that Defendant's Motion be GRANTED with respect to Plaintiff's Title VII and ADEA claims, but DENIED with respect to her FLSA claim.

## II. Undisputed Facts[7]

Plaintiff was fifty-four years old when she applied for, and received, a full-time position with Defendant at its Grassmere Park location in Nashville, Tennessee, as a Welcome Call Representative. Docket Entry No. 16-1, Ex. 1, Deposition of Mary Bell Witherspoon ("Plaintiff's Dep."), pp. 81, 133. Plaintiff began working for Defendant on or about June 30, 2003. Docket Entry No. 16-1, Ex. 13, Defendant's Offer of Employment Letter. The essence of Plaintiff's position was to contact new customers and welcome them to the company. Plaintiff's Dep., p. 133.

---

[6]Defendant notes: "Plaintiff's Response makes frequent mention to an Exhibit D, but no such papers have been served or, to Defendant's knowledge, filed with the Court." *Id.* That document has been filed with the Clerk.

[7]Unless otherwise noted, the following facts are not in a form required by Fed. R. Civ. P. 56, but are undisputed, and will be considered by the Court as such.

6

On or about February 19, 2004, Plaintiff sustained what she believed to be an on-the-job injury and left work. Plaintiff's Dep., pp. 62-63; Docket Entry No. 16-1, Ex. 3, Letter from MetLife denying Plaintiff's request for Family and Medical Leave. She subsequently requested a medical leave of absence. Docket Entry No. 16-1, Ex. 2. On February 23, 2004, Plaintiff's request for leave under the Family and Medical Leave Act was denied because she had not worked for Defendant for a minimum of one year. Docket Entry No. 16-1, Ex. 3, Letter from MetLife denying Plaintiff's request for Family and Medical Leave.

Plaintiff filed a claim for Short-Term Disability benefits, which was denied on March 12, 2004. Docket Entry No. 16-1, Ex. 5, Letter from MetLife denying Plaintiff's claim for Short-Term Disability benefits. Plaintiff did not appeal the denial of her claim. Plaintiff's Dep., pp. 162-64.

Plaintiff also filed a claim for Workers' Compensation benefits, which was denied on June 3, 2004. Docket Entry No. 16-1, Ex. 6, Letter from Sedgwick Claims Management Services, Inc., finding that Plaintiff's Workers' Compensation claim was not compensable. Plaintiff did not appeal that determination. Plaintiff's Dep., pp. 162-64.

Defendant notified Plaintiff on June 3, 2004, that, because she was found ineligible for leave under the Family and Medical Leave Act, ineligible for Short-Term Disability benefits, and ineligible for any leave related to Workers' Compensation, her continued absence was considered "unexcused," and she needed to return to work on June 8, 2004, or face termination. Docket Entry No. 16-1, Ex. 4, Letter from Defendant requesting that Plaintiff return to work. Plaintiff did not return to work, and her employment was terminated effective June 10, 2004, because of "job abandonment." Docket Entry No. 16-1, Ex. 7, June 14, 2004, Memorandum

from Defendant to Plaintiff terminating her employment.

Defendant generally regarded Plaintiff as a competent employee. Docket Entry No. 16-1, Exs. 8, 9, collection of awards and customer compliments of Plaintiff and an October 27, 2003, "Coaching/Training Session" report. Plaintiff's supervisors concluded that, although Plaintiff was successful at meeting some of her goals, she "struggled to meet some of her core objectives," and she would benefit from further training. Docket Entry No. 16-1, Ex. 10, Plaintiff's 2003 Performance Review. Accordingly, Plaintiff was required to attend a two week refresher "new hire training" that was to begin February 16, 2004. Docket Entry No. 16-1, Ex. 11, Email pertaining to Plaintiff's training attendance.

On or about February 18, 2004, while attending her refresher "new hire training," Plaintiff became ill and left work. Docket Entry No. 16-1, Ex. 6, Letter denying Plaintiff's Workers' Compensation claim; Plaintiff's Dep., pp. 62-63. She did not return to work or complete the training. *Id.*

Plaintiff was not subjected to jokes or comments regarding her age, race, or gender while in Defendant's employ. Plaintiff's Dep., pp. 77-81.

Plaintiff claims $412.50 (plus interest) in unpaid wages, representing the time to prepare for, and shut down after, her shift. Plaintiff's Dep., p. 218. Defendant offered to pay Plaintiff $412.50 in unpaid wages, plus an amount equal to that representing liquidated damages. Docket Entry No. 16-1, Ex. 12, Letter from Defendant's counsel to Plaintiff offering to settle her unpaid wages claim. Plaintiff seeks $1,237.50. Docket Entry No. 11, Amended Complaint. Plaintiff refused Defendant's offer. Docket Entry No. 32, Plaintiff's Response.

### III.   Analysis

## A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than ten (10) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty (20) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

As has been noted, Defendant filed the pending Motion on January 26, 2006. Docket Entry No. 16-1. On March 30, 2006, Plaintiff filed a Motion for Leave to File Response to Motion for Summary Judgment (Docket Entry No. 26), which was granted by the undersigned (Docket Entry No. 31). Plaintiff subsequently filed a "Response to Motion for Summary Judgment" (Docket Entry No. 32), which is actually a Response to Defendant's Separate Statement of Undisputed Material Facts (Docket Entry No. 18). Accordingly, Plaintiff has failed to respond appropriately to Defendant's Motion. Pursuant to Local Rule 7.01(b), Plaintiff's failure to appropriately file a timely response "indicate[s] that there is no opposition to the motion."

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...
> . . .
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of

9

>additional facts, within the time periods provided by these Rules
>shall indicate that the asserted facts are not disputed for the
>purposes of summary judgment.

Although Plaintiff's "Response to Motion for Summary Judgment" (Docket Entry No. 32) is actually a Response to Defendant's Separate Statement of Undisputed Material Facts (Docket Entry No. 18), Plaintiff does not respond to each fact set forth by Defendant, and the responses that Plaintiff does provide are not in compliance with the Rules. Accordingly, Plaintiff has failed to respond appropriately to Defendant's Separate Statement of Undisputed Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to appropriately respond indicates "that the asserted facts are not disputed for the purposes of summary judgment."

## B. Motion for Summary Judgment

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to appropriately respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met its burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for Summary Judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C. The Case at Bar**

In the case at bar, Plaintiff avers that Defendant discriminated against her on account of

11

her race, gender, and age in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act.[8] Plaintiff also asserts an unpaid wages claim under the Fair Labor Standards Act.

Title VII of the Civil Rights Act of 1964 ("Title VII") protects employees from discrimination on the basis of an individual's race, color, religion, sex, or national origin, and provides, in part:

> It shall be an unlawful employment practice for an employer--
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

Federal courts do not have jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998) (*citing Ang v. Procter & Gamble Co.,* 932 F.2d 540, 544-45 (6th Cir. 1991)). Thus, as a prerequisite to bringing a Title VII discrimination claim in federal court, a claimant is required to

---

[8]Although Plaintiff does not specifically state that she was discriminated against in violation of the Age Discrimination in Employment Act ("ADEA"), Plaintiff does assert that Defendant discriminated against her on account of her age, and age is not a protected class under Title VII. Accordingly, the Court will construe that Plaintiff is asserting her age discrimination claim pursuant to the ADEA.

file a charge of discrimination or retaliation with the EEOC and is precluded from seeking judicial review until the Commission has made a final disposition of his claim. 42 U.S.C. § 2000e-5. *See also, United Air Lines, Inc. v. Evans*, 431 U.S. 553, 554, 97 S. Ct. 1885, 1887, 52 L. Ed. 2d 571 (1977). The wording of the allegations in the EEOC charge does not, however, have to be exact or all-encompassing; rather, the court may consider allegations not explicitly stated in the EEOC charge if those allegations could reasonably be expected to grow out of the charge of discrimination. *Tipler v E. I. du Pont de Nemours & Co.*, 433 F.2d 125, 131 (6th Cir. 1971) (*citing Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465-66 (5th Cir. 1970)*; King v. Georgia Power Co.*, 295 F.Supp. 943 (N.D. Ga. 1968)).

In order to establish a prima facie case of race or gender discrimination in violation of Title VII, Plaintiff must prove that,

> 1) she is a member of a protected class;
>
> 2) she was qualified for her job and performed it satisfactorily;
>
> 3) despite her qualifications and performance, she suffered an adverse employment action;[9] and
>
> 4) that she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside her protected class.

*Johnson v. University of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). *See also Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000). (Footnote added.)

---

[9]An adverse employment action is one that causes a materially adverse change in a term of employment, such as significantly diminished responsibilities, termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *See Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885-86 (6th Cir. 1996).

13

A plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of discrimination, or by proving circumstantial evidence that would support an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000), *citing Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct evidence approach, once the plaintiff introduces evidence that the employer terminated him because of his protected status, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even had it not been motivated by discrimination. *Johnson*, 215 F.3d at 572, *citing Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (*citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)).

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as later clarified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to first establish a prima facie case of discrimination. *Id.* If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* If the defendant carries this burden, the plaintiff must then prove that the proffered reason was actually pretextual. *Id.* The plaintiff may establish pretext by showing that, 1) the stated reasons had no

14

basis in fact; 2) the stated reasons were not the actual reasons; or 3) the stated reasons were insufficient to explain the defendant's action. *Id. See also, Cicero v. Borg-Warner Automotive, Inc.,* 280 F.3d 579, 589 (6th Cir. 2002). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

Plaintiff also asserts discrimination based upon her age. As has been noted, although she does not specifically so state, the Court will construe that Plaintiff asserts that Defendant discriminated against her because of her age in violation of the Age Discrimination in Employment Act ("ADEA"), as age is not a protected class under Title VII.

The ADEA prohibits discrimination based upon age and states in pertinent part as follows:

> It shall be unlawful for an employer--
>
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
>
> (3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a).

A prima facie case of age discrimination under the ADEA requires Plaintiff to demonstrate that she:

    1. is a member of a protected class (i.e. was at least forty (40)

15

years of age at the time of the alleged discrimination);

   2.  is qualified for the position;

   3.  suffered an adverse employment action; and

   4.  was treated differently than, or replaced by, a younger, similarly situated person outside of the protected class.

*Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538-539 (6th Cir. 2002), *citing Kline*, 128 F.3d at 349.

Age discrimination claims brought pursuant to the ADEA are likewise evaluated under the *McDonnell Douglas-Burdine* tripartite test discussed above. *Wexler*, 317 F.3d at 574, *citing Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998).

As has been discussed, in order to defeat Defendant's properly pleaded Motion for Summary Judgment, Plaintiff must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56. In so doing, Plaintiff cannot rely upon conclusory allegations or denials. If Plaintiff fails to make a showing sufficient to establish the existence of an element essential to her case, and on which she will bear the burden of proof at trial, there is no genuine issue as to any material fact, and Defendant is entitled to a judgment as a matter of law. *Celotex*, 477 U.S. at 322-23.

It is undisputed that Plaintiff is an African-American female who was fifty-four years of age at the time that she was in Defendant's employ, and therefore that Plaintiff was a member of the protected class.

It is also undisputed that Plaintiff was generally considered a competent employee, but that she was asked to attend a two week refresher "new hire" training, which she did not complete. Defendant argues that "attendance is a required qualification of a customer care

16

representative and plaintiff's failure and refusal to return to work and perform her job shows - unquestionably - that she was not qualified to perform the most basic job duty." Docket Entry No. 17, p. 9. Plaintiff was discharged for "job abandonment," however, not incompetency.

Plaintiff asserts that not receiving two consecutive days off and being asked to attend refresher "new hire" training constitute discriminatory adverse employment actions.[10] As has been noted, however, an adverse employment action is one that causes a materially adverse change in a term of employment, such as significantly diminished responsibilities, termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *See Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885-86 (6th Cir. 1996). Neither Plaintiff's not receiving her desired schedule, nor her being asked to participate in training constitute a materially adverse change in a term of her employment: *i.e.,* she did not incur significantly diminished responsibilities; she was not demoted; her salary was not reduced; her title did not change; and she did not lose any benefits. Accordingly, Plaintiff cannot establish the requisite elements of her claims.

Furthermore, it is undisputed that Plaintiff sought leave under the Family and Medical Leave Act, and that that leave was denied. It is further undisputed that Plaintiff filed claims for both Short-Term Disability benefits and Workers' Compensation benefits, and that both of those claims were denied. It is also undisputed that Defendant notified Plaintiff on June 3, 2004, that, because she was found ineligible for leave under the Family and Medical Leave Act, ineligible

---

[10]Plaintiff additionally complains that she had to work one lunch hour when others did not. Plaintiff also argues that she is owed wages for the time required to set-up for her shift and shut-down after her shift, but she does not aver that Defendant's failure to pay her was on account of her race, gender, or age.

17

for Short-Term Disability benefits, and ineligible for any leave related to Workers' Compensation, her continued absence was considered "unexcused," and she needed to return to work on June 8, 2004, or face termination. Plaintiff did not return to work, and her employment was terminated effective June 10, 2004, because of "job abandonment."

Although Plaintiff asserts that Defendant discriminated against her on account of her race, gender, and age, she has failed to adduce any affirmative evidence, in a form required by Fed. R. Civ. P. 56, to support those allegations. An employee's subjective perception that she has been discriminated against, in the absence of objective evidence substantiating such perception, does not constitute probative evidence of discrimination. *See, e.g., Locke v. Commercial Union Ins. Co.,* 676 F.2d 205, 206 (6th Cir. 1982); *Mayberry v. Endocrinology Diabetes Assoc.,* 926 F. Supp. 1315, 1323-24 (M.D. Tenn. 1996).

Plaintiff has not adduced any evidence to show that any actions allegedly taken by Defendant were motivated by bias due to her race, gender, or age, and she cannot establish a prima facie claim of discrimination. Plaintiff has offered no evidence whatsoever concerning her claims of "Pay Discrimination" or "Retaliation." Defendant is entitled to a judgment as a matter of law.

With regard to Plaintiff's unpaid wages claim under the FLSA, it is undisputed that she conceded that the most that she was owed for unpaid wages was $412.50 (plus interest), which represented wages for the four minutes that it took to prepare for her shift and the four minutes that it took to close down after her shift. It is further undisputed that Defendant offered to pay Plaintiff those wages, as well as an equal amount for "liquidated damages." Finally, it is undisputed that Plaintiff seeks $1,237.50, and that she refused Defendant's offer.

18

Although Defendant offered to settle Plaintiff's unpaid wages claim, Defendant has not cited any controlling authority to this Court supporting the proposition that Plaintiff is required to accept Defendant's settlement proposal and that her refusal to do so somehow nullifies her claim.  The Court also notes that Defendant's offer to settle this claim was not unconditional, but was conditioned upon Plaintiff's signing a release.  Docket Entry No. 16, Ex. 12, Letter from Defendant's counsel to Plaintiff offering to settle her unpaid wages claim.  Plaintiff clearly was under no obligation to sign the release or settle this claim.

Defendant bears the burden of establishing that it is entitled to a judgment as a matter of law.  Defendant has not met this burden with respect to Plaintiff's FLSA claim.  Defendant is, therefore, not entitled to Summary Judgment on this claim.

## IV.  Conclusion

For the foregoing reasons, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED IN PART and DENIED IN PART.  Specifically, the undersigned recommends that Defendant's Motion be GRANTED with respect to Plaintiff's Title VII and ADEA claims, but DENIED with respect to her FLSA claim.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court.  Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections.  Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

19

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

20